UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDOLF ISLAMOV,<br><br>                  Petitioner,<br><br>v.<br><br>JOHN DOE, Warden, Otay Mesa Detention Center et al.,<br><br>              Respondents. | Case No.: 26-cv-01528-JES-VET<br><br>**ORDER:**<br><br>**(1) GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; and**<br><br>**(2) DENYING AS MOOT PETITIONER'S MOTION FOR IMMEDIATE RELEASE** |

Before the Court is Petitioner Rudolf Islamov's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"), and Motion for Immediate Release or, in the alternative, for a Bond Hearing ("Motion"). ECF Nos. 1, ("Pet."). Pursuant to the Court's Order to Show Cause (ECF No. 2), Respondents (the "Government") filed the Return to the Petition on April 22, 2026. ECF No. 4, ("Ret."). The Court then took the matter under submission. For the reasons set forth below, the Court **GRANTS** the Petition.

//

## I. BACKGROUND

Petitioner is a native and citizen of Cameroon. Ret. at 2. On December 26, 2025, Petitioner was detained by U.S. Customs and Border Protection while attempting to unlawfully enter the United States near San Ysidro, California. Ret. at 2; ECF No. 4-2, ("I-213"), at 2. He was deemed inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), placed in expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1), and taken into Immigration and Customs Enforcement ("ICE") custody. Ret. at 2.

While in ICE custody, Petitioner expressed a fear of return to Cameroon and was referred for a Credible Fear Interview. ECF No. 4-1 at 9. On January 2, 2026, Petitioner received a positive credible fear determination. *Id.* at 13. On January 6, 2026, removal proceedings pursuant to 8 U.S.C. § 1229(a) were initiated against Petitioner. Ret. at 2; ECF No. 4-1 at 2.

Petitioner's initial master calendar hearing was held on January 15, 2026. ECF No. 4-3 at 6. On January 30, 2026, Petitioner filed an application for asylum, withholding of removal, and protection under the Convention Against Torture. *Id.* On February 4, 2026, the Department of Homeland Security moved to pretermit Petitioner's applications based on the Asylum Cooperation Agreement ("ACA") with Uganda. ECF No. 4-4 at 2. On February 27, 2026, the Immigration Judge ("IJ") granted the motion and ordered Petitioner removed to Uganda. *Id.* at 4., Petitioner timely filed an appeal of the IJ's removal order to the Board of Immigration Appeals ("BIA") on March 5, 2026. ECF No. 4-5 at 2. At the time the Return was filed, Petitioner's appeal remains pending before the BIA. Ret. at 3; ECF No. 4-3 at 3.

Petitioner has been detained at Otay Mesa Detention Center ("OMDC") since December 26, 2025—which is just four months. Ret. at 3. Petitioner filed this action, seeking habeas relief in the form of his immediate release or, in the alternative, an individualized bond hearing before an IJ. Pet. at 7.

//

//

26-cv-01528-JES-VET

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

Habeas corpus is "perhaps the most important writ known to the constitutional law ... affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## III.   DISCUSSION

Petitioner alleges that his continued detention, without an individualized bond hearing, violates the Due Process Clause of the Fifth Amendment. Pet. at 6–7. In its Return, the Government argues: (1) the Court lacks jurisdiction under 8 U.S.C. § 1252(g); (2) Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(1)(B)(ii); and (3) Petitioner's detention has not become unconstitutionally prolonged. Ret. at 3–12. The Court addresses each in turn.

26-cv-01528-JES-VET

The Court recently addressed these issues in *Sandesh v. LaRose*, No. 26-CV-0846-JES-DDL, 2026 WL 622690, at *1–6 (S.D. Cal. Mar. 5, 2026). The Court elects to follow that same rationale here and incorporates it by reference.

**A.    Jurisdiction**

The Government raise two arguments to challenge jurisdiction. First, it argues that Section 1252(g) bars judicial review because Petitioner's detention arises from the decision to commence removal proceedings against him. Ret. at 3–4. The Court is not persuaded. Section 1252(g) strips jurisdiction over claims "arising from" the decision to commence proceedings, adjudicate cases, or execute removal orders. But a constitutional challenge to the *duration* of detention—as opposed to the *decision* to detain—is not jurisdictionally barred. *See Martinez Lopez v. Noem*, No. 25-cv-2717-JES-AHG, 2025 WL 3030457, at *2–3 (S.D. Cal. Oct. 30, 2025).

Second, the Government contends that Petitioner failed to perfect jurisdiction because the Petition does not name his immediate custodian as a Respondent, which 28 U.S.C. § 2243 requires. Ret. at 4-5 n.2; *see* 28 U.S.C. § 2243. Respondents are correct that habeas petitions generally require the petitioner to name the person who has custody over him. 28 U.S.C. § 2242 ("It shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known."); *see Doe v. Garland*, 109 F. 4th 1188, 1197 (9th Cir. 2024) ("[C]ore habeas petitioners challenging their present physical confinement [must] name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition."). As such, Respondents argue that district courts have dismissed petitions for lack of jurisdiction when the warden of the detention facility is not specifically named in the petition. *See, e.g.*, *Mukhamadiev v. U.S. Dep't of Homeland Security*, No. 25-cv-1017-DMS-MSB, 2025 WL 1208913, at *3 (S.D. Cal. April 25, 2025). //

However, other district courts have acknowledged this technical defect, but did not dismiss the petition, particularly where a *pro se* litigant is involved. *See Herrera-Ramirez*

26-cv-01528-JES-VET

*v. United States*, No. 2:25-CV-01749-MMD-EJY, 2025 WL 3239043 (D. Nev. Nov. 19, 2025). In *Herrera*, the Court recognized the Ninth Circuit's statement in *Doe* as cited above and while acknowledging that the petitioner, there, only named the Attorney General and the ICE field office director, the court stated:

> In this way, the Petition does not follow the requirements laid out by statute. But notably, the *Doe v. Garland* petitioner was represented by multiple attorneys and civil rights organizations. *See* 109 F.4th at 1189. Here, Petitioner is unrepresented. The Court "has a duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements."

*Id.* at *2 (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The *Herrera* court retained jurisdiction and addressed the case on the merits. *See also Singh v. Field Off. Dir., San Francisco Field Off., United States Immigr. & Customs Enf't*, No. 24-CV-03472-RMI, 2024 WL 4454824, at *1 (N.D. Cal. Sept. 9, 2024) (transferring petition that was filed in wrong district and without naming warden, instead of dismissing the case, "which would only delay this matter and unduly burden Petitioner").

Here, Petitioner named "John Doe, Warden, Otay Mesa Detention Center" as a Respondent. Considering Petitioner's *pro se* status, the liberty interest at issue, supportive in-circuit district court decisions, and the Government's appearance and response in this action all support the Court's finding that the Petition sufficiently perfects jurisdiction. *See Devilmar v. U.S. Immigr. & Customs Enf't ICE,* No. 3:26-CV-0009-JES-MSB, 2026 WL 130387, at *1 (S.D. Cal. Jan. 16, 2026). Accordingly, the Court concludes that it has jurisdiction to hear, and will address, this Petition on the merits.

**B.  Petitioner Is Properly Detained Under Section 1225(b)**

The record establishes that, on October 25, 2025, Petitioner applied for admission at the San Ysidro port of entry without valid immigration documents and was not granted parole of any kind. *See* Ret. at 3. Accordingly, Petitioner is an arriving alien detained under

26-cv-01528-JES-VET

Section 1225(b)(1)(B)(ii). *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018); *Sandesh*, 2026 WL 622690, at *2.

### C. The *Banda* Factors Weigh in Favor of Ordering a Bond Hearing

This Court, along with numerous others within this Circuit, has found that prolonged mandatory detention will, at some point, raise due process considerations. *Sandesh*, 2026 WL 622690, at *2–3. To determine whether a noncitizen's prolonged detention under Section 1225 is unconstitutional, courts in this district consider the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019). The Court now turns to apply this test.

#### (1) Length of Detention

The first *Banda* factor, total length of detention, is "the most important factor." *Id.* "Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable" *Amado v. United States Dep't of Just.*, No. 25-CV2687-LL (DDL), 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) (finding detention of thirteen months to weigh in favor of the petitioner); *Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *3 (S.D. Cal. Nov. 12, 2025) (finding that although "almost 12 months" detention was not dispositive, factor does weigh in favor of petitioner); *Gao v. LaRose*, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025) ("The Court finds that Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."); *Tonoyan v. Andrews*, No. 1:25-CV-00815-SKO (HC), 2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) ("Petitioner has been detained approximately 11 months. This period . . . qualifies as prolonged."); *Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906,

26-cv-01528-JES-VET

at *3 (N.D. Cal. Jan. 25, 2019) ("In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'") (citation omitted).

In cases where Courts have found this factor to be neutral, have involved petitioners that were, at the time of review, subjected to shorter periods of detention. *See Odimara v. Bostock*, No. 2:24-CV-572-JHC-GJL, 2024 WL 3862256, at *6 (W.D. Wash. July 12, 2024) (finding length of detention neutral or "slightly in favor of granting a bond hearing" where petitioner had been detained "approximately six months"). Petitioner has been continuously detained since October 25, 2025. ECF No. 5-2 at 2. As of the date of this Order, Petitioner has been in ICE custody for just over six months. Accordingly, the Court finds that the first *Banda* factor weighs slightly in favor of granting a bond hearing.

### (2) Likely Duration of Future Detention

The second *Banda* factor considers the "anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119. "The usual removal process involves an evidentiary hearing before an immigration judge," followed by potential BIA and Ninth Circuit review, a process that can take two or more years. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020); *Banda*, 385 F. Supp. 3d at 1119.

Here, Petitioner has already filed his asylum application and is awaiting a merits hearing. ECF No. 5-6 at 2. He has not yet received an IJ decision, let alone any BIA or appellate review. Given the realistic prospect of adverse proceedings followed by further appeals, the likely duration of future detention is substantial. This factor, therefore, weighs in favor of granting a bond hearing.

### (3) Conditions of Detention

"The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). The Government does not address detention conditions in its Return. Petitioner has been held at OMDC for several months. Form I-213

26-cv-01528-JES-VET

at 2. Courts have recognized that the conditions at OMDC are "indistinguishable from penal confinement." *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 773 (S.D. Cal. 2020); *Amado*, 2025 WL 3079052, at *6. Considering OMDC's conditions, Petitioner's argument that he is entitled to a bond hearing is very strong. *See Banda*, 385 F. Supp. 3d at 1119; *see also Kydyrali*, 499 F. Supp. 3d at 773. Accordingly, this factor weighs heavily in favor of Petitioner.

### (4) Delays Caused by the Detainee; and (5) Government

The fourth and fifth *Banda* factors examine delays attributable to the petitioner and the Government, respectively. *Banda*, 385 F. Supp. 3d at 1119–20. The record does not reflect any delays attributable to either party. ECF No. 5-6 at 2. The Government does not identify any such delays in its Return. Ret. at 9. Accordingly, both factors are neutral.

### (6) Likelihood of a Final Order of Removal

The sixth *Banda* factor looks to whether the noncitizen has asserted any defenses to removal. *Banda*, 385 F. Supp. 3d at 1120. Petitioner filed an asylum application and is actively pursuing protection from removal. ECF No. 5-6 at 2. The Court is in no position to assess the merits of his asylum claim at this stage. This factor is, therefore, neutral.

In sum, at least three *Banda* factors weigh in favor of Petitioner, with the remainder neutral. Under these circumstances, Petitioner's detention has become unreasonable and due process requires that he be afforded an individualized bond hearing. *See Sandesh*, 2026 WL 622690, at *2–3; *see also Banda*, 385 F. Supp. 3d at 1117–20.

### D.  Due Process Requirements for a § 1225(b) Bond Hearing

Consistent with *Sandesh* and the Court's decision in *Yue*, the proper standard at a bond hearing ordered after a finding of prolonged detention requires the Government to show by clear and convincing evidence that Petitioner is a flight risk or poses a danger to the community. *Sandesh*, 2026 WL 622690, at *2–3; *Singh v. Holder*, 638 F.3d 1196, 1200, 1203, 1208 (9th Cir. 2011). This standard is necessary to protect Petitioner's liberty interest and due process rights. *See, e.g., Banda*, 385 F. Supp. 3d at 1120; *Gao*, 805 F. Supp. 3d at 1112.

## IV.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus, and **ORDERS** as follows:

(1)    The Court **ORDERS** Respondents to provide Petitioner with an individualized bond determination hearing within **ten days** of this Order.

    a. At the hearing, the Government **SHALL BEAR** the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk if he were to be released.

    b. Respondents **SHALL** make a complete record of the bond hearing available to Petitioner and his counsel.

(2)    Respondents are **ORDERED** to File a Notice of Compliance within **five days** of providing Petitioner with the bond hearing, including apprising the Court of the results of the hearing.

(3)    The Clerk of Court is **DIRECTED** to **CLOSE** this case

**IT IS SO ORDERED.**

Dated: April 30, 2026

_____
Honorable James E. Simmons Jr.
United States District Judge

26-cv-01528-JES-VET